Good morning, your honors. This is the police court. I'm Curtis Vanderbilt and I'm here on behalf of the appellant, Mr. Vigil Duarte-Rosas. As to the issue of the Certificate of Appealability, the Certificate of Appealability asks whether or not the defendant had waived his right to collaterally attack his conviction or to which is contained within the excerpts of record, clearly identify that the defendant did not give up his right to appeal his sentence. His conviction, yes, but his sentence, no. His conviction, yes, but his sentence, no, as per the plea agreement. But I intend to address why I think the waiver of his right to collaterally attack his conviction is also defective. But under the Barron case, the inbound decision of the Ninth Circuit, the court held that if you have a right still to appeal your sentence, that is sufficient in and of itself to allow you to go forward and seek redress. So I think it's important to point out that at paragraph 8 of the plea agreement, which is on paragraph 9 of the excerpts of record, it says the defendant agrees to waive any right to appeal or collaterally attack his conviction. The defendant reserves the right to appeal the sentence actually imposed in this case. So under the Barron holding, my client would have the right to relief that is addressed in the Certificate of Appealability. However, I believe that his right to attack his conviction also should be preserved. The reason being is that while the amendments to Rule 11 were added in 1999 and then again revised by renumeration in 2002, the fact is that the rule simply incorporated what had been the way in which the waivers were required to be properly shown to the court in the first instance. So I think that all that the rule did was encompass what had been previously the purpose of gathering a waiver. If you look at the excerpts of record page 16 of the excerpts of record, it says, was this plea agreement translated to you in your native language before you signed it? The interpreter said, he says, no, not yet. The question was then re-translated and yes, and then his attorney says, it hasn't been translated in writing, Your Honor, but we went through it in detail. The court orally, Mr. Seville, in Spanish, translation, yes. I think that to me it is unclear as to specifically him having understood that he was giving up his right to appeal or collaterally attack his conviction. There was just a general sense that they had quickly moved through this plea agreement and had orally discussed with him what the content was. Well, did you have this adjudicated in the district court, whether that's valid or not? Your side? I don't believe it's prior counsel had. Well, I mean, isn't this the wrong place to bring that up? I mean, this is an issue that has to be first brought up in the trial court. Now you're attacking the validity of the waiver for the first time? I believe that, no, I didn't at the district court level. And did you appeal that? I believe that was part of the purpose of seeking the certificate of appealability, which was denied, and then ultimately that I certainly granted the certificate of appealability, Your Honor. So as I was saying, I believe that the right to collaterally attack his conviction should exist both under the holding of a hearing case, which allows for the defendant to attack his conviction because he preserves his right to appeal his sentence, and the sentence having been illegally imposed. Did the government advance an argument in the district court that your client had a plea waiver, or did the government simply argue the merits? The government simply argued the merits. They did not allege procedural default. The government didn't argue the plea bargain waiver? Did it waive the defense based upon that? I believe that it did. I believe that they are procedurally defaulted. Isn't this a jurisdictional question and one that we have to raise on our own to determine whether or not we have jurisdiction over this appeal? I believe that's the purpose of the certificate of appeal before the court relative to whether or not he maintains the opportunity to seek review. The government argues that... He has the right to appeal his sentence under this. That's unquestioned. And so I guess what I'm going to... So you could argue, I suppose, that if in fact he's not guilty of this crime because... Because it's not a crime. Well, you're right, because if in fact the drugs were imported from somewhere in the United States, as opposed to somewhere from outside the United States, he has an illegal sentence. He has an illegal sentence. And under Barron, he therefore has a right, because he has an illegal sentence, to attack that sentence. And he can have the sentence set aside simply because he preserved his right to appeal his sentence. So whether or not he... You don't mean appeal, you mean collaterally attack. You just mean collaterally attack. Well, there's another wrinkle here is that he waived his right to a collaterally attack the convention, but not to attack the sentence. And in the Barron case... Well, the way I read this, defendant agrees to waive any right to appeal or to collaterally attack this conviction. He reserves the right to appeal the sentence actually imposed. So I'm reading that to suggest that if you get nowhere on any collateral attack, the only thing that he reserved the right to deal with was the sentence actually imposed. That's pretty limited. That is exactly the circumstances that exist in the Barron case. And the Ninth Circuit en banc panel said that preserving the right to appeal the... to appeal the sentence or collaterally attack the sentence was sufficient basis for Barron to seek his relief. And if that's the case, then I see no difference between Barron and Mr. Duarte Rosas. I'll take another good look at that case. Do we have the language in the Barron case of the actual waiver? I've got the Barron case in front of me, and I re-read it because I didn't want to... I don't remember having seen the actual language of the waiver in that case. It might be there, I just don't remember it. I don't recall the exact language within that plea agreement, Your Honor. I just do recall that at the beginning of the analysis, the court points out that the defendant, having preserved his right to attack his sentence, it was the sentence imposed that was not authorized by law. And therefore, he had the right to proceed to attack his sentence. Well, but you read me some language earlier that said that there was collateral attack that was exactly the same language. That's what I'm after. I'm wondering whether we're dealing with the same language. You don't have a copy of that case in front of you? I do have a copy of the Barron case in front of me. What's the language? What was the precise waiver? Did he waive the right to collaterally attack that conviction? That's what the district court focuses on here. So ordinarily, you might be right. If there's nothing like that in there, and you have the right to attack the sentence, you could attack the underlying conviction in certain limited ways. But this language is what I'm hung up on, or to collaterally attack this conviction. Usually, I don't see within the decision where it specifically references the language within this plea agreement. So really, the Barron case only dealt with the preserved right to attack the sentence. That's correct. That's what they said. They said that he had preserved his right to attack his sentence. You see, that's what's different here. I won't repeat it. Well, I respectfully advise the court I don't agree with. Well, I know you don't, but what do we do with somebody who's waived his right to collaterally attack this conviction? I believe that had been the case in the Barron case, but that the only thing that he had preserved the right to do was to attack the sentence. And it isn't the conviction that he's seeking to be relieved from. It's the sentence he's seeking to be relieved from. It's the onus of the sentence that keeps him in prison. It's not the onus of the conviction. The sentence is what puts him in prison. You could have a conviction and no jail time, particularly now that the sentencing guidelines are meaningless, except for that they are a guide to the courts. It's really the sentence which keeps him in prison. Let me understand your position. So you're saying that all you're seeking is to let him out of jail, but the conviction stands, so he's a felon based on his conviction? I suppose that may ultimately be the relief that he receives, but what we're seeking to do is to relieve him of the onus of the sentence. It's the sentence that keeps him in prison. But don't we need to know more? Don't we really need to remand to the district court to find out exactly what the language in the indictment meant when it said, or elsewhere? Because we don't know what that means. Well, the court actually offered an analysis of that issue, Your Honor, and said that the court couldn't figure out exactly what or elsewhere was. It didn't accept the defense's argument that it was simple boilerplate, but on the other hand said they couldn't say for certain that it meant a foreign country, and found that the evidence that was offered in support of it might be outside of the United States was rather flimsy, was the language of the court below. So even if it were to find, I would tend to think that the language of the court referring to that evidence as flimsy simply fails to meet the standard that's required by law. All right, well, you're over your time.  Thank you very much, and we'll hear from the government. Good morning, Your Honors. May it please the court, counsel. My name is Mara Vigdavid. I represent the appellee United States in this matter. The sole issue certified before this court on appeal is whether or not the district court below erred by enforcing the defendant's plea agreement, waiving his right to collaterally attack his conviction. The defendant is attacking his conviction, and the conclusion of his brief, he's not asking, for example, for a sentence of probation. He's asking that the case or his case be dismissed. Let me ask you what I asked of your court and counsel. As I read the papers filed by the government in the district court, the government did not assert as a defense to the 2255 motion the waiver in the plea agreement. That is correct, Your Honor. Why have you not then waived that as a defense? In the district court below, the government asserted the procedural default claim. In responding to the issue whether or not the district court properly enforced the appellant's waiver, in a Section 2255 case, Rule 4B authorizes the district court to consider on its own initiative whether or not petitioner is entitled to relief. In denying the defendant's petition below, the district court not only relied on the procedural default claim that the government asserted, but on its own also raised as a basis for denial the express waiver in the defendant's plea agreement, expressly waiving his right to collaterally attack the conviction. When you say the district court has the right sua sponte to do that, does the district court have the right sua sponte after the government has responded and not asserted a defense? The rule, Your Honor, provides the district court with flexibility when the district court receives, for example, habeas corpus petitions. I refer, for example, to the advisory committee note rule, to that rule, supporting the district court's authority. For example, in that note to Rule 4B of Section 2255, it's stated there that the judge has the discretion to require an answer or other appropriate response from the U.S. attorney. Along the same vein, that also indicates that the court also had discretion to dispose of the motion without requiring a response. Indicates or says? You're using the word indicates. Which, to me, indicates that the district court also had the discretion to dispose of the motion without requiring a response. Is that what happened here, no response? Well, in this case, Your Honor, the government provided an answer. The district court ruled on the motion. The parties were aware of the ruling of the district court's motion, including the express waiver and the plea agreement. The parties, including the defendant, had an opportunity to move for reconsideration. Hang on a second. There was no oral argument or hearing then. The district court ruled only on the papers? That is correct, Your Honor. But the district court, instead of dismissing without requesting a response, the district court ordered a response from the government. That is correct, Your Honor. And when the district court ordered a response, did it limit in any way that order saying respond directed to X question, or did it just say please respond? It just gave a briefing schedule, as I recall. It didn't even say please or that. Why did the government not rely on the waiver? The government overlooked that defense, but it's the government's decision that the district court had authority under the rule to raise it. Do you have any cases that suggest that that's the case? Well, Your Honor, in the Ninth Circuit, and I refer to the case of Boyd v. Thompson that I cited in my brief, although that case concerned a claim of procedural default, as I recall that case, the Ninth Circuit in that case noted that the habeas court should exercise its discretion to raise, in that case, as I indicated, procedural default claims sua sponte. So I respectfully submit that the district court was proper in denying the motion. But let me read to you the first sentence from the Boyd case. This court writes, This appeal requires us to decide whether a district court may raise the issue of procedural default sua sponte before the state custodian is served with or files an answer. So the question we're dealing with is not whether the district judge did sua sponte before an answer from the government, but rather whether the district court acts properly after the government has responded and after the government has failed to raise a defense. Well, Your Honor, I respectfully – it's my position, respectfully, that the rule 4B to Section 2255 provides the district court with a discretion. I mean, the district court didn't even have to require the government to respond. I understand that. The question is, having requested the government to respond, and the government responds with one defense that leaves off another, I mean, it sounds like waiver to me. But it's the government's position that the district court could overlook that because it has a discretion. But you don't have any case that tells you that in the posture in which this one shows up. I understand the cases where the government is relieved of any obligation to respond. In a technical sense, it can't be waiver, though, because it's not a knowing relinquishment of an understood right. I mean, you just forgot about it. So the best thing is, so it's a forfeiture, not a waiver. I mean, I can't dispute that that was overlooked on the part of the government. And for lack of a better word, the district court saved our bacon. Answering back to your question, Your Honor, I cited to the case of Greer, a Supreme Court case, recognizing that the appellate court could exercise its discretion to dismiss a habeas petition, even although that was a state habeas case, forfeited or waived a defense that the court in that case relied on. As to the transcript of the change of pre-hearing that counsel referred to in the excerpt of record, frankly, I interpret that to be a knowing and voluntary waiver of the defendant's right to collaterally attack his conviction. The defendant, who was represented by counsel, advised the court that he went over his plea agreement with his counsel, was an interpreter, and counsel further clarified that they went over the plea agreement in great detail. Simply put, Your Honor. It just seems to me those are the kinds of details that the district court hashed out, and we're really dealing with something else. But there's a possibility here we're dealing with somebody who pleaded guilty to a nonexistent crime after CABACAC, is that right? That's what the defense claims. It's not a position that the government put forth below and today. Well, what's your, I mean, you've read CABACAC, you've lived with this thing. What's your position? Well, in the district court below, when the government raised its procedural default claim, the government argued that the defendant couldn't establish actual innocence of the charge he was convicted of. Granted, it was a fast-track type plea bargain, but public policy recognizes such plea agreements. Yeah, I understand that, but what's the problem? I mean, the problem here is there may be no crime underneath the conviction or the sentence. Well, Your Honor, in the plea agreement, it's recognized that the defendant is a citizen of Mexico. And prior to the sentencing, when the pre-sentence report was prepared, and the plea agreement recognizes that the defendant was one of the sources of the black tar heroin to his co-conspirators in Guam. The plea agreement recognizes that Guam and California and other parts, or plea agreement recognizes that the conspiracy didn't limit the locales to just Guam and California. So you know a little bit about this case? You're telling us that it came from Mexico? Yes, Your Honor. But how do we know that from the record? We know it from where the defendant is from. We know it from the pre-sentence report that was prepared prior to the defendant's sentencing hearing. So, well, jumping ahead to a bit of the end game, if we were to send this back then for a hearing to determine whether this person is actually innocent, your position would be no, because we'll be able to establish that the heroin came from a place outside the United States? That is correct, Your Honor. If there are no further questions. All right, thank you for your time anyway. Okay, the case of the United States v. Duarte Rosas is submitted.
judges: Trott, Wardlaw, W. Fletcher